UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AGNALDO DE OLIVEIRA,

       Petitioner,

    v.                                                        25-CV-0942-MAV
                                                             DECISION & ORDER
THE UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, *et al.*,

       Respondents.

---

Petitioner Agnaldo de Oliveira, is a civil immigration detainee currently being held at the Buffalo Federal Detention Facility, in Batavia, New York. He filed a complaint for declaratory and injunctive relief and a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming – among other things – that Respondents are violating his Fifth Amendment right to due process by denying him adequate medical care for a serious eye condition. ECF No. 1. He has also filed a motion for a temporary restraining order requiring his immediate release. ECF No. 4. For the reasons that follow, Petitioner's motion for a temporary restraining order seeking his immediate release is denied and the petition is dismissed.

## BACKGROUND[1]

Petitioner is a citizen and national of Brazil. ECF No. 12-2 at 5. On November 18, 2016, he was arrested by the United States Border Patrol near Santa Teresa, New

---

[1] The following background was drawn from the petition (ECF No. 1), the exhibits attached thereto (esp., ECF Nos. 1-2 and 1-3), and the medical records and supporting declarations filed by Respondents (ECF Nos. 12, 20, 34, 37).

Mexico after a Border Patrol agent observed him cross the border without inspection at a place not designated as a port of entry. *Id.* at 12. He was issued a Notice to Appear, released on an order of recognizance due to lack of detention bed space, and ordered to report in person to the Boston (Massachusetts) Field Office later that month. *Id.* at 5.

In September 2021, Plaintiff suffered severe injuries to his left eye in a workplace accident. ECF No. 1 ¶ 9. Thereafter, he underwent several surgical procedures, including the insertion of a tube shunt. *Id.* ¶ 14. In a letter submitted as an exhibit to the petition, Sai B. Gandham, M.D. stated that due to the eye injury, Petitioner suffers from end-stage glaucoma in his left eye, with critically elevated intraocular pressure. ECF No. 1-2 at 2. Dr. Gandham further stated that Petitioner's "necessary treatment includes Brimonidine tartrate, Cyclogyl (cyclopentolate), to manage ciliary spasm and inflammation; and Prednisolone acetate, a topical steroid essential for controlling inflammation and stabilizing the ocular surface." *Id.* Petitioner also included a letter from Robert Eden, M.D. of Cornea Consultants of Albany, PLLC. ECF No. 1-3. Dr. Eden noted that Petitioner has struggled with his left eye "for the last several years," and requires the following treatment:

> He is maintained in a Bandage contact lens which needs to changed every 3-4 weeks (sooner if it pops out.) He needs to be maintained on several eyedrops timolol in the left eye BID, brimonidine in the left eye BID, prednisolone in the left eye BID, Polymixin in the left eye QID, Tobramycin in the left eye QID and cyclopentolate in the left eye TID. Despite these medications he is also often in sever[e] pain and may need very frequent topical lubrication, and an ice pack.

*Id.* at 3.

On July 3, 2025, Petitioner was detained when he reported to an Immigration and Customs Enforcement ("ICE") field office in Albany, New York for a scheduled check-in pursuant to his order of recognizance. ECF No. 12-2 at 5–6. All of Petitioner's prescribed medications were delivered to the ICE officer who originally detained Plaintiff. ECF No. 1 ¶ 11. That same day, Petitioner was transferred to the Buffalo Federal Detention Facility ("BFDF"), where he remains detained. *Id.* ¶ 3.

Petitioner filed the petition presently before the Court on September 26, 2025, maintaining that Respondents have violated his Fifth Amendment due process rights by denying him adequate medical care. ECF No. 1. Petitioner also alleges Respondents violated the Administrative Procedure Act ("APA") by deviating from agency policy, and that he is entitled to release pending adjudication and declaratory judgement that Respondents have and had no basis to refuse Petitioner his prescribed medications. ECF No. 1. Then, on October 15, 2025, Petitioner filed a motion for a temporary restraining order, which fully briefed by October 31, 2025, and updated through multiple status letters tracking with Petitioner's scheduled surgeries through early January 2026. ECF Nos. 16 to 39.

## LEGAL STANDARDS

The Supreme Court has long recognized that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process" for civil immigration detainees. *Demore v. Kim*, 538 U.S. 510, 523 (2003). Moreover, various provisions of the Immigration and Nationality Act (the "INA") authorize the detention of aliens both before and after they are ordered removed from the United States. *See*

*Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018). Yet the authority to detain removable aliens is not unbounded: in addition to statutory limits, the Supreme Court and the Second Circuit have identified constitutional limits that immigration officials must observe.

Section 2241(c)(3) of Title 28 of the United States Code authorizes federal courts to grant habeas relief in certain circumstances to civil immigration detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." Indeed, as relevant here, the Second Circuit has long held that "[a]n application for habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for an inmate in federal custody to challenge conditions or actions that pose a threat to his medical wellbeing." *Basank v. Decker*, 613 F. Supp. 3d 776, 788 (S.D.N.Y. 2020) (citing *Roba v. United States*, 604 F.2d 215, 218–19 (2d Cir. 1979)).

While awaiting the Court's consideration of habeas relief, the detainee may seek a temporary restraining order ("TRO"). The party seeking a TRO must show "(1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (citing *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)). If the federal government is the opposing party, then factors (3) and (4) merge. *New York v. Trump*, 765 F. Supp. 3d 287, 291 (S.D.N.Y. 2025) (citing, *inter alia*, *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Further, "[w]here a party seeking a temporary restraining order

4

fails to establish a likelihood of success on the merits, there is no need to address the other prongs of the analysis." *Bragg v. Jordan*, 669 F. Supp. 3d 257, 267 (S.D.N.Y. 2023), *appeal dismissed sub nom. Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023) (internal citation and quotation marks omitted).

## DISCUSSION

As noted above, the habeas petition and motion for a TRO presently before the Court both seek Petitioner's immediate release on the grounds that Respondents violated Petitioner's Due Process rights under the Fifth Amendment, and violated the APA by deviating from its own policies. The petition also seeks a declaratory judgment that Petitioner is entitled to his prescribed medications. For the reasons discussed below, Petitioner's motion for a TRO and his application for habeas relief are denied.

## I. Petitioner's Due Process Rights

Petitioner alleges that Respondents "have deprived, and are depriving, [him] of adequate medical care while he has been detained at the [BFDF], including by routinely failing to provide [him] access to critical prescribed medications and medical treatment for his severe eye condition." ECF No. 1 ¶ 80. Petitioner further maintains that "[t]he inhuman and punitive conditions that [he] is subjected to at the [BFDF] . . . are not rationally related to a non-punitive purpose, are more restrictive than necessary, are not reasonably related to legitimate governmental objectives, and pose a significant threat to [Petitioner]'s medical wellbeing." *Id.* ¶ 81. Respondents dispute Petitioner's characterization of the care he is receiving at BFDF, arguing that he "has

received regular, ongoing care, and . . . has not presented evidence sustaining his claim to suffering deliberate indifference or that ICE has acted in violation of the Administrative Procedures Act." ECF No. 28.

## A. Legal Principles

A pretrial detainee's claims regarding the conditions of his confinement are evaluated under the Due Process Clause because, "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)). Thus, the Fifth Amendment protects federal pretrial detainees from deliberate indifference to their serious medical needs. *See, e.g., Mercado v. Noem*, 800 F. Supp. 3d 526, 572–73 (S.D.N.Y. 2025) (evaluating detainees' claims of inadequate medical care under the Fifth Amendment).

To state a claim for failure to provide adequate medical care under the Fifth Amendment, the detainee must show: (1) that the petitioner has a serious medical need or needs, and (2) that the respondents acted with deliberate indifference to those needs. *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Darnell*, 849 F.3d at 29). "In determining whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, [courts must] consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily

6

activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Further, "'[d]eliberate indifference' to serious medical needs 'can be established by either a subjective or objective standard.'" *Arias v. Decker*, 459 F. Supp. 3d 561, 572 (S.D.N.Y. 2020) (citing *Charles*, 925 F.3d at 87). That is, the petitioner can prove deliberate indifference "by showing that the [respondent]-official recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [petitioner] even though the [respondent]-official knew, or should have known, that the condition posed an excessive risk to the [petitioner]'s health or safety." *Id.* Nevertheless, courts grant officials "wide discretion" in treating detainees such that "'[d]isagreements over . . . forms of treatment' do not rise to the level necessary for a Fifth Amendment Claim." *Ruiz v. Trump, et al.*, No. 2:26-CV-00012, 2026 WL 483182, at *4 (D. Vt. Feb. 20, 2026) (quoting *Jones v. Sherriff of Suffolk Cnty.*, 518 F. Supp. 3d 650, 657 (E.D.N.Y. 2021)).

## B. The Care Provided by Respondents

Petitioner's serious medical need is undisputed: the record is clear that he suffered a serious eye injury in 2021 that is important, worthy of treatment, affects his daily activities, and causes chronic pain. However, Petitioner has failed to demonstrate Respondents' deliberate indifference to that serious medical need. Indeed, according to over 300 pages of ICE medical records submitted under seal, as well as declarations from Eugene Charbonneau, a doctor of osteopathy employed by the ICE Health Service Corps, Respondents have acted with reasonable care and

provided adequate medical attention to Petitioner during his detention at BFDF. ECF Nos. 12-3, 29.

At his initial physical examination by ICE, conducted by Nurse Practitioner Annabelle L. Schrauger ("NP Schrauger") on July 4, 2025, Petitioner reported that he was diagnosed with hypertension in 2021, and that a nail from a nail gun injured his left eye that same year. ECF No. 20 at 133. NP Schrauger noted that pharmacy staff confirmed that Petitioner's medications included gabapentin, nifedipine for hypertension, acetazolamide for eye pressure, and multiple eyedrops for his left eye: dorzolamide-timolol, prednisolone, cyclopentolate, brimonidine, ofloxacin, and eye lubricant. *Id.* She also noted that Petitioner did not have acetazolamide with him, and that she would follow-up with his doctor the following Monday. *Id.*

In his first declaration, Dr. Charbonneau specifically identified all of the medications Petitioner was being provided. ECF No. 12-3. He noted that Petitioner's medications had been largely continued, with only his meloxicam discontinued by ICE as medically unnecessary (*Id.* ¶¶ 11, 22–23), his ofloxacin discontinued by recommendation of the Lake Plains Eye Center (*Id.* ¶¶ 43–46), and his acetazolamide replaced with dorzolamide, a different carbonic anhydrase inhibitor with fewer side effects (*Id.* ¶¶ 13–17). Other than those changes, Petitioner has continued to receive gabapentin (*Id.* ¶¶ 18–21), dorzolamide (*Id.* ¶¶ 24–26), brimonidine titrate (*Id.* ¶¶ 27–30), timolol maleate (*Id.* ¶¶ 31–34), cyclopentolate (*Id.* ¶¶ 39–42), and an eye lubricant (*Id.* ¶¶ 47–49). Records also indicate that Petitioner's pain has been treated frequently with ibuprofen or acetaminophen tablets. *See, e.g.,* ECF No. 20 at 13

(listing acetaminophen on Petitioner's medication list); *see also* ECF No. 20 at 38–39 (noting, on August 9, 2025, an increase in his acetaminophen dosage and Petitioner's referral to a specialist for headaches attributed to Petitioner's left eye).

Dr. Charbonneau also listed fourteen additional medical appointments that Petitioner had between July 4 and October 25, 2025 (ECF No. 12-3 ¶ 7), and stated that Petitioner was receiving treatment for his left eye "from experienced specialists," including an optometrist at the Lake Plains Eye Center on October 3, 2025 who removed and replaced the bandage contact lens ("BCL") in Plaintiff's left eye (*Id.* ¶ 52–53), and a referral to the Flaum Eye Institute of Rochester. *Id.*

In a supplemental declaration dated December 5, 2025, Dr. Charbonneau noted that at Petitioner's appointment with the Flaum Eye Institute on November 3, 2025, an ophthalmologist recommended that Petitioner undergo a tube revision procedure and potential cyclophotocoagulation laser surgery to lower intraocular pressure in Petitioner's left eye. ECF No. 34 ¶ 4. The tube revision procedure was performed on November 20, 2025, and the surgeon reported that the surgery was successful. *Id.* ¶ 5–6. The cyclophotocoagulation was performed on December 9, 2025, and the surgeon reported that Petitioner "tolerated [the] procedure well." ECF No. 37 at 132–47. At Petitioner's follow-up appointment on December 30, 2025, testing demonstrated that the intraocular pressure in Plaintiff's left eye had been reduced from a maximum of "60" in early December to "10" on December 30. *Id.* at 106–08; *see also* ECF No. 1-2 at 2 (Petitioner's physician, Dr. Gandham, noting that the normal range of intraocular pressure is 10–20 mmHG). At an appointment with ICE

Registered Nurse Charlotte Cavers on January 6, 2026, Petitioner again presented with ongoing eye pain and was prescribed 10 tablets of acetaminophen "to get him through the next few days." *Id.* at 4–5.

Despite his assertions to the contrary, Petitioner has failed to demonstrate that Respondents were deliberately indifferent to his medical needs. As summarized above, Petitioner was provided access to medical appointments, continued on his prescribed medications and given additional medications as prescribed by ICE providers or eye specialists, and afforded two significant eye surgeries performed by specialists to treat his pre-existing eye condition. In fact, one of those surgeries, the cyclophotocoagulation, was precisely the procedure recommended by Petitioner's treatment provider, Dr. Gandham. *See* ECF no. 1-2 at 2 (Dr. Gandham recommending laser cyclophotocoagulation to lower Petitioner's intraocular pressure levels). Under these circumstances, the Court cannot find that Respondents failed to act with reasonable care in the treatment of Petitioner's serious medical need.

## II. 5 U.S.C. § 706(2) (the APA)

In addition to his Due Process claims, Petitioner argues that Respondents violated 5 U.S.C. § 706(2) because they arbitrarily deviated from their own agency policies. As Petitioner points out, §§ 5.7 and 5.9(b) of ICE Policy No. 11087.2, "Operations of ERO Holding Facilities" requires Respondents to, among other things, "[a]llow detainees to . . . have access to other prescribed medication as necessary" and to "[r]espond immediately to observed or reported medical emergencies and contact local emergency medical services when a detainee is determined to need urgent

medical care." ECF No. 4-5 at 7; *see also* ECF No. 1-1. Petitioner argues that Respondents have violated these policies by repeatedly denying him access to his prescribed medications and medical treatment for his severe eye condition.

## A. Legal Principles

The APA provides, in pertinent part, that a court reviewing the legitimacy of agency action shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . contrary to constitutional right, power, privilege or immunity . . . [or] without observance of procedure required by law . . . ." 5 U.S.C. § 706(2)(A),(B),(D). Further, the Second Circuit has explained that "[a]n agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Kakar v. United States Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022) (citing *Alzokari v. Pompeo*, 973 F.3d 65, 70 (2d Cir. 2020)).

## B. Respondents' Care of Petitioner

For the reasons described above with respect to Petitioner's due process claim, the Court finds that Petitioner has failed to demonstrate any of the indicia of an arbitrary and capricious agency action identified by the Second Circuit. He has not shown that ICE or other immigration officials have acted arbitrarily and capriciously,

11

violated a constitutional right, or even violated their own policies, because Petitioner has not shown that Respondents acted with deliberate indifference or failed to provide reasonable care. The record indicates that Petitioner continued to receive his prescribed medications, relevant medical procedures, and appropriate follow-up care.

## III. Release Pending Adjudication & Declaratory Judgment

Petitioner makes additional arguments for relief based on the Court's "inherent authority to admit to bail individuals properly within their jurisdiction" and on the Declaratory Judgment Act (28 U.S.C. §§ 2201–02). However, for the reasons discussed above, the Court finds these arguments to be without merit, as Petitioner has not demonstrated that his rights to reasonable medical care have been violated.

In sum, Petitioner has not demonstrated that he is being held "in custody in violation of the Constitution or laws or treaties of the United States." Therefore, his motion for a temporary restraining order and his application for habeas relief under 28 U.S.C. § 2241 are both denied.

CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the petition for habeas corpus, ECF No. 1, is DISMISSED WITHOUT PREJUDICE; and it is further

ORDERED that Petitioner's motion for a temporary restraining order, ECF No. 4, is DENIED; and it is further

ORDERED that the Clerk of Court shall close this case.

12

SO ORDERED.

**Dated**:        March _20_, 2026
                 Rochester, New York

                                                    HON. MEREDITH A. VACCA
                                                    United States District Judge

13